JESÚS STELLA RODRÍGUEZ, now his heirs CONSUELO MARCUCCI STELLA ET AL., Plaintiffs, Appellants and Appellees, v. MUNICIPALITY OF GUAYANILLA, GREAT AMERICAN INDEMNITY CO., ET AL., Defendants, Appellees and Appellants.

No. 10914. Argued March 2, 1954.—Decided June 30, 1954.

*Leopoldo Tormes* for plaintiffs, appellants and appellees. *R. Rivera Zayas, G. Rivera Cestero* and *Milton F. Rúa* for the Great American Indemnity Co., defendant, appellee and appellant. *Charles Cuprill* for defendants, appellees and appellants surnamed Rodríguez.

MR. JUSTICE MARRERO delivered the opinion of the Court.

This litigation arose as the result of the facts which follow: Sometime in 1933 Jesús Stella Rodríguez, who was engaged in the planting and cultivation of sugar-cane, applied to the Public Service Commission for authorization to construct a spur track between kilometers 256 and 257 along the main line of the American Railroad Co. of Puerto Rico. The municipality of Guayanilla [1] objected, but on December 19 of that year the Commission, over its objection, entered an order granting the desired authorization. The municipality appealed on January 15, 1934 and, in order to stay the effects of that order, the same day moved the former District Court of San Juan to so decree. See §§ 78, 79 and 80 of Act No. 70 of December 6, 1917 (Sess. Laws, vol. II, pp. 432, 526). The court granted the motion by order of the 15th of that month and year, directing the railroad company and Stella Rodríguez to appear before the court on the following 25th day, at two o'clock, to show cause why the supersedeas order sought should not be granted. It further ordered that, while the decision of the petition in question was pending, the American Railroad Co. abstain from enforcing the order of the Commission and ordered the petitioner to give "a $2,000 bond to answer for any damages that may be caused to the prejudiced party." That bond was given on January 15, 1934 by the municipality, as principal, and the Great American Indemnity Co., as surety.

---

[1] Hereinafter referred to simply as the municipality.

On March 9, 1934 the court issued an interlocutory order in which, after referring to the hearing held on January 25 of that year, decreed and ordered that, pending the resolution and decision of the appeal, the municipality "shall give a bond in favor of The People of Puerto Rico for the sum of $2,000, for the benefit of the party injured by this order and to answer for any resulting damages, and granting a period of five days, counted from notice of such order, to do so." The second bond thus fixed was given on March 14, 1934 by the municipality, as principal, and Pedro Rodríguez, Jr. and Pedro Rodríguez Díaz, as sureties.

On May 29, 1935 the court entered another order in which, after referring to the interlocutory order of March 9 of the previous year, to which reference is made in the preceding paragraph, stated that Stella Rodríguez had requested by motion of April 9 that the bond be increased up to a minimum amount of $5,000, and that, after a hearing at which only the petitioner was present, notwithstanding the fact that the other parties had been given notice thereof, the court was altogether satisfied that the bond originally given pursuant to the interlocutory order was insufficient. Thereupon, the court ordered that the bond be increased up to the sum of $5,000 and, inasmuch as a $2,000 bond had already been given in compliance with such order, that "an additional bond for the sum of $3,000, retroactive to March 9, 1934, under the same conditions as the $2,000 already given," be furnished, and granted a period of five days to do so. This new bond, designated as the third in this action, was given on June 14, 1935 by the municipality, as principal, and the Great American Indemnity Co., as surety, one of the clauses of which specifies that it shall have retroactive effect to March 9, 1934.

By judgment of February 16, 1937, the former District Court of San Juan dismissed the appeal taken by the municipality. Thereupon the municipality appealed to the Supreme Court of Puerto Rico and, by judgment of May 31, 1938, we affirmed the judgment appealed from. See *Municipality* v.

*Public Service Comm.*, 53 P.R.R. 263. It is well to mention at this point that while the appeal taken from the judgment of the district court was being perfected, and while the same was pending decision before this Court, no additional bond of any kind whatever was given.

On June 25, 1938 the municipality appealed from our judgment to the United States Court of Appeals for the First Circuit, and, in order to avoid enforcement of the judgment appealed from, moved this Court to fix a supersedeas bond and for costs. On the 12th of the following July we fixed the former at $10,000 and the latter at $300. These bonds were given sixteen days later by the municipality, as principal, and the Great American Indemnity Co., as surety, and approved by us the following day. By a per curiam decision of December 13, 1940, the Court of Appeals for the First Circuit affirmed our judgment. *Municipality of Guayanilla v. Public Service Com'n.*, 116 F.2d 15. And on June 2, 1941 the Supreme Court of the United States denied a petition for certiorari filed in the case. *Municipality of Guayanilla v. Public Service Com'n. of Puerto Rico*, 313 U. S. 587.

In view of this state of affairs, Jesús Stella Rodríguez filed on August 8, 1941, in the former District Court of the Judicial District of Ponce, the action for damages herein involved. It is there alleged that, in view of the fact that he was not permitted to construct the spur on the date the authorization was granted by the Public Service Commission, plaintiff was compelled to incur greater expenses in the transportation of his cane, claiming the sum of $22,000 for damages, plus costs and attorney's fees.

Defendants Rodríguez Díaz and Rodríguez, Jr., answered denying the essential facts of the complaint, alleging as special defenses prescription of the action and, by virtue of the subsequent bond given by the Great American Indemnity Co., the extinguishment of their obligation by merger. The municipality denied the facts alleged in the complaint. As special defenses, it alleged that the Mayor of Guayanilla had

no authorization from the assembly to oppose, on the municipality's behalf, Stella Rodríguez' petition, that if judgment adverse to the municipality were rendered, it would be illusory since there was no appropriation in the budget, and that the action had prescribed. The Great American Indemnity Co. denied the facts alleged, raised certain special defenses, and further filed a cross-claim against the municipality, alleging that the latter had promised to reimburse any loss, damage, and expense which it might incur or be liable for under the bonds given. It prayed in its cross-claim that any judgment that might be rendered should determine the respective liabilities and rights under the bonds between the municipality, as principal, and the Great American Indemnity Co., as surety, and further, that if it be ordered to pay a specific amount to plaintiff, the municipality likewise be ordered to pay to it the equivalent sum, plus $2,000 for attorney's fees incurred in the defense of the action, as well as the total expenses which might be incurred in the investigation and defense of this action. [2]

During the trial the parties offered exhaustive oral and documentary evidence. On December 29, 1952, the Superior Court of Puerto Rico, Ponce Part, successor of the District Court of Puerto Rico and the latter of the former District Court for the Judicial District of Ponce, rendered judgment sustaining the complaint and ordering the defendants, the Municipality of Guayanilla, the Great American Indemnity Co. of New York, Pedro Rodríguez Díaz, and Pedro Rodríguez, Jr., to pay jointly to plaintiffs [3] the sum of $8,153.55, "namely, the total excess of expenses incurred by plaintiff Jesús Stella Rodríguez in the transportation and wagoning

[2] As stated by the lower court in its opinion, neither the municipality of Guayanilla nor any of the other parties to this action have made any allegation in opposition to the claim of the Great American Indemnity Co. of New York, and at the trial codefendant the Great American Indemnity Company of New York offered evidence in support of those allegations.

[3] Jesús Stella Rodríguez died on December 4, 1944, and was substituted by his heirs as plaintiffs.

during the grinding seasons from 1934 to 1941 inclusive, as compared with the expenses for a similar account incurred during the 1942 grinding season, when they were able to use the spur which had been authorized to be constructed and connected." Defendants were further ordered to pay jointly to plaintiffs the sum of $882.65, "covering the difference in the cost of construction and connection of the spur between 1933, when authorization therefor was granted, and 1941, when it could have been constructed and connected along the main railroad line of the American Railroad Co. of Puerto Rico." Defendants were further ordered to pay the cost of litigation, plus $750 for attorney's fees. "Lastly, the munici-pality of Guayanilla is ordered to pay to . . . , the Great American Indemnity Co. of New York, the sum of $560.49 incurred by that company in the investigation and defense of this action, at the expense of that defendant, and . . . the sum of $2,000 for attorney's fees incurred by that company in the defense of this case." That judgment is based on a lengthy opinion in which the following findings of fact are set forth:

". . . . . . . .

"19. That plaintiff Jesús Stella Rodríguez was compelled during the grinding seasons from 1934 to 1941 inclusive, to transport the cane produced by his properties in the municipality of Guayanilla to the Guayanilla railroad station, and from there to the mills of Boca Chica in the Municipality of Juana Díaz, Puerto Rico, and Mercedita, in the Municipality of Ponce, Puerto Rico, with which he had made grinding contracts.

"20. That the Guayanilla railroad station, to which plaintiff Jesús Stella Rodríguez had to transport his cane during the grinding seasons from 1934 to 1941 inclusive, had no available loading or wagoning facilities.

"21. That in view of the distance between the properties of plaintiff Jesús Stella Rodríguez and the Guayanilla railroad station, as well as the deficiencies in that station to perform the work of loading, unloading, and wagoning of the cane, plaintiff Jesús Stella Rodríguez incurred expenses in excess of those he might have incurred had he been able to transport the cane from his properties to the spur which he was authorized

on December 19, 1933 by the Public Service Commission of Puerto Rico to construct and connect at kilometers 256 and 257 of the main railroad line of the American Railroad Company of Puerto Rico.

"22. That the average costs of wagoning the cane produced by plaintiff Jesús Stella Rodríguez during the grinding seasons comprised in the years 1934 to 1941 inclusive, in the Guayanilla railroad station, were by years as follows:

Year:

| | | |
|------|--------|---------------|
| 1934 | 12.294 | cents per ton |
| 1935 | 12.185 | cents per ton |
| 1936 | 12.072 | cents per ton |
| 1937 | 12.052 | cents per ton |
| 1938 | 12.746 | cents per ton |
| 1939 | 11.646 | cents per ton |
| 1940 | 13.550 | cents per ton |
| 1941 | 14.750 | cents per ton |

"23. That the general average cost of wagoning the canes of plaintiff Jesús Stella Rodríguez during the entire period comprised between 1934 and 1941 inclusive, in the Guayanilla railroad station, was 12.66 cents per ton.

"24. That the average cost of wagoning the cane produced in the different properties of plaintiff Jesús Stella Rodríguez and his heirs during the 1942 grinding season, on the spur constructed at kilometers 256 and 257 of the main line of the American Railroad Company of Puerto Rico, was 4.3296 cents per ton.

"25. That taking the general average cost of wagoning the cane of plaintiff Jesús Stella Rodríguez during the grinding seasons of 1934 to 1941 inclusive, and deducting therefrom the average cost of wagoning the cane during the 1942 grinding season, the difference will be 8.3304 cents per ton in excess.

"26. The general average of the costs of transporting the cane produced by the different properties of plaintiff Jesús Stella Rodríguez to the Guayanilla railroad station, during the grinding seasons of 1934 to 1941 inclusive, as compared with the average costs of transportation during the 1942 grinding season to the already-constructed railroad spur, exceeds .640 cent per ton.

"27. That allowing an annual average of expenses of maintenance of the spur on the main line of the American Railroad

Company of Puerto Rico constructed by plaintiffs of .0065 cent per ton, the difference in detriment to the interests of plaintiff Jesús Stella Rodríguez and his heirs in transportation expenses between the two points—Guayanilla railroad station and the spur—is .0575 cents per ton.

"28. That the general average of cane produced by the different properties of plaintiff Jesús Stella Rodríguez during the grinding seasons of 1934 to 1941 inclusive, was 57,907.155 tons.

"29. That plaintiff Jesús Stella Rodríguez incurred expenses in the wagoning of his cane from the grinding seasons of 1934 to 1941 inclusive, in excess of the expenses incurred for the same account in the 1942 grinding season, aggregating four thousand eight hundred twenty-three dollars and eighty-nine cents ($4,823.89).

"30. That plaintiff Jesús Stella Rodríguez incurred expenses in the transportation of his cane for the grinding seasons of 1934 to 1941 inclusive, in excess of the expenses incurred for the same account during the 1942 grinding season, aggregating three thousand three hundred twenty-nine dollars and sixty-six cents ($3,329.66).

"31. That plaintiff Jesús Stella Rodríguez incurred expenses in the wagoning and transportation of his cane from the Guayanilla railroad station during the grinding season of 1934 to 1941, in excess of the expenses incurred for the same account (transportation and wagoning) on the spur constructed for the 1942 grinding season, totalling eight thousand one hundred fifty-three dollars and fifty-five cents ($8,153.55).

"32. That the cost of the construction and connection of the spur authorized by the Public Service Commission of Puerto Rico by order of December 19, 1933, on the basis of the cost of construction materials then prevailing and according to conservative estimates of experts in the construction of works of this nature, would have been one thousand nine hundred fifty-nine dollars and fifty-seven cents ($1,959.57).

"33. That the cost of the spur and its connection to the main line of the American Railroad Company, on the basis of the estimates of persons also experts in the construction of this type of works, and in view of the rising costs of materials as well as of labor in 1941, when the spur which is the object of this action was finally constructed and connected, was two

thousand eight hundred forty-two dollars and twenty-two cents ($2,842.22).

"34. That the difference in the cost of the spur by reason of the increasing cost of materials and labor between 1933 and 1941, exceeded eight hundred eighty-two dollars and sixty-five cents ($882.65).

"35. That the allowance or compensation which the Central Boca Chica paid to plaintiff Jesús Stella Rodríguez for the transportation of its cane, was part of the consideration under the terms of the annual grinding contract between the mill and the cane grower Jesús Stella Rodríguez.

"We believe that, in view of the evidence in this case, the special care allegedly exercised by plaintiff Jesús Stella Rodríguez in the transportation of his cane within the urban zone of the Municipality of Aguadilla, being compelled to pass by public-school buildings on the way to the Guayanilla railroad station, where he was forced to transport, unload, and wagon his cane to be removed to the mill for grinding, is part of the difference in the expenses for those accounts alleged in paragraphs 29 and 30 above. We further believe that in the instant case, independently of the fact that the evidence is not conclusive, the moral anguish and mental preoccupation of plaintiffs' ancestor are not compensable.

"36. That the Great American Indemnity Company of New York, from the day the complaint herein was filed to the day of the trial, incurred expenses in the investigation and organization of the defense in the sum of five hundred sixty dollars and forty-nine cents ($560.49), and that the company made a contract of professional services whereby it agreed to pay its attorney the sum of two thousand dollars ($2,000) for his services in this litigation in asserting the rights of the Great American Indemnity Company of New York."

■■ Rodríguez Díaz, Rodríguez, Jr., the Great American Indemnity Co., and the Municipality of Guayanilla appealed from that judgment to this Court. Plaintiffs also appealed in so far as they were awarded only the sum of $750 for attorney's fees. Since defendant municipality has filed no brief on appeal, its petition will be dismissed.

Appellants Rodríguez Díaz and Rodríguez, Jr., assign seven errors in their brief. The Great American Indemnity

Company assigns eight in a separate brief. Some of them are, nonetheless, a repetition of those assigned by the other appellants. We turn to discuss immediately all the assignments.

Contrary to appellant's contention, the trial court did not err in overruling the defense of prescription. The action for damages instituted herein is *ex delicto—Ávalo* v. *Cacho*, 73 P.R.R. 274, 279—which could not be brought until the judgment had become final. *Capó* v. *A. Hartman & Co.*, 57 P.R.R. 190, 194; *Martí* v. *Hernández*, 57 P.R.R. 804; *Sosa* v. *Morales*, 58 P.R.R. 362, 366; *Cintrón* v. *Ins. Ind. & Agr. Exp. Ass'n. Inc.*, 58 P.R.R. 820. Being *ex delicto*, the action prescribed in one year and the time for the pre- scription "shall be counted from the day on which they could have been instituted." [4] Since in the instant case the judgment became final and unappealable on June 2, 1941, when the Supreme Court of the United States denied the petition for certiorari filed in that case, and it was then that plaintiff was in a position to exercise his action, the period of prescription of one year started to run on that day. Since the action herein was brought on August 8, 1941, it was instituted within the year prescribed by § 1868 of the Civil Code, 1930 ed.

██ Although, as stated above, no new or additional bond was given upon appeal to the Supreme Court of Puerto Rico from the judgment rendered by the District Court, the second and third bonds ($2,000 and $3,000 respectively) were effective from March 9, 1934 until the case was finally

---

[4] According to § 1868 of the Civil Code, 1930 ed:

"The following prescribe in one year:

". . . . . . .

"2. Actions to demand civil liability . . . for ..obligations arising from the fault or negligence mentioned in Section 1802, from the time the aggrieved person had knowledge thereof."

And according to § 1869 of the same Code:

"The time for the prescription of all kinds of actions when there is no special provision to the contrary, shall be counted from the day on which they could have been instituted."

decided by this Court on May 31, 1938. Those bonds were given to save harmless the American Railroad Co. and other parties from any damages "resulting in the event it were finally decided that judgment in the action adverse to appellees did not lie." Otherwise stated, the purpose of those bonds was to answer for any damages which might be caused to Stella Rodríguez by the stays of the order of the Public Service Commission while the action was pending. In accord with § 348 of the Code of Civil Procedure, "An action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed . . ." Construing that Section we said in *Morales* v. *Cruz*, 36 P.R.R. 216, 217, that "we feel bound to hold that an action is still pending until an unappealable judgment arises." See also *Lawton* v. *Rodríguez*, 38 P.R.R. 34, 42, and 1 Cal. Jur. 2d, p. 41, § 14. Thus, the two bonds (the second and third for $2,000 and $3,000 respectively) given in the case at bar were wholly effective while the action was pending both in the District Court of San Juan and in this Supreme Court. Consequently, the lower court acted correctly in holding that those bonds answered for any damages caused to plaintiff subsequent to February 16, 1937, the day judgment was rendered by the District Court.

■ Nor did the trial court err in holding that the damages suffered by plaintiff totaled $8,153.55. We need not discuss in detail how that court reached the conclusion that the damages aggregated that sum. Those particulars appear from the findings quoted hereinbefore.

■ On the other hand, although there is not the least doubt that one who is injured is bound to exercise reasonable care and diligence to minimize or lessen the resulting damage—*Ortiz* v. *McCormick Steamship Co.*, 57 P.R.R. 551, 557; 15 Am. Jur. 420, § 27; 81 A.L.R. 282; 106 A.L.R. 1299—there is nothing in the record to show that the ances-

tor of the heirs was not diligent in this respect. If the Centrales Mercedita and Boca Chica offered him better conditions than Rufina, and, if on the other hand, Stella Rodríguez and the owners of the latter mill were not on good terms, there was no reason to conclude that, in view of the fact that the latter was closer than the former to the properties of Stella Rodríguez, he was necessarily bound to grind his cane at Central Rufina, and that in so doing he did not exercise due diligence to minimize the damages.

The lower court was legally correct in holding that the municipality was responsible for the damages resulting from its having applied for and obtained a supersedeas of the order entered by the Public Service Commission. The order was executory notwithstanding the appeal taken by the municipality—§ 80, *supra*—and it was precisely to answer for any damages that might be caused to Stella Rodríguez by the supersedeas of that order that the bonds in question were given.

The acts of the mayor in the instant case were duly authorized by the Municipal Assembly of Guayanilla, as evidenced by resolutions appearing in the record. He was the one called upon to appear in the proceeding. Section 29, Act No. 53 of 1928 (Sess. Laws, pp. 334, 336).

The fact that the complaint is verified does not imply in any manner whatever that it should have been dismissed on the ground that all the damages claimed were not established. In an action such as this, plaintiff's burden was to establish damages for any amount in order that judgment could be entered in his favor.

Nothing in the above-quoted findings of fact shows that the lower court included in its estimates the cane produced by the Santoni property. Neither did the court err in awarding damages for the 1934 grinding season. It could have concluded, from the evidence offered, that since the construction of the spur was authorized on December 19, 1933, and since the spur was very short, it could have been ter-

minated and used during that season except for the municipality's interference.

▇ The bond given by Rodríguez Díaz and Rodríguez, Jr. in the sum of $2,000 (second bond) was not rendered ineffective by the subsequent $10,000 supersedeas bond. The latter was given *exclusively* to answer for any damages that might be caused by the stay of the judgment rendered by this Court, from which an appeal was taken to the Circuit Court.

▇ Appellants are not correct in holding that they have the benefit of discussion. No such right exists in judicial securities. Section 1755 of the Civil Code, 1930 ed.; *Goico* v. *Flores*, 35 P.R.R. 125.

▇ Defendants further maintain that in the instant case the securities are altogether ineffective due to the fact that the person signing them on behalf of the municipality was its counsel, Mr. Pedro M. Porrata, and not the mayor. The record discloses that all the securities, with the exception of the supersedeas bond to stay the execution of the judgment rendered by this Court, as respects the principal, are signed as follows: "Municipality of Guayanilla, Pedro M. Porrata, Attorney for the Principal." This does not render them invalid. The record reveals that the Municipal Assembly, by resolution duly approved conferred authorization to give "the required bond", that the premiums thereon were paid and that the purpose sought by the municipality was achieved. However, there is nothing to indicate that Mr. Porrata did not sign by delegation. This is sufficient to uphold the sufficiency of the bonds. 17 McQuillin, *Municipal Corporations*, 3d ed., p. 232, § 49.33. On the other hand, there is nothing in our legislation requiring that the principal's signature must appear on the bond together with the sureties. In order for every bond to be valid, it is indispensable that it be signed by the latter.[5]

---

[5] Section 355 of the Code of Civil Procedure reads as follows:

"(1) In all cases where an undertaking with sureties is required by

*Cf.* 8 Am. Jur., p. 710, § 10. And that it must be given at the instance of a surety, or the effects thereof inure to the latter.

■ Although the trial court committed none of the errors argued above, it did, however, err in not ascertaining the specific portion for which each of the bonds was to answer out of the total award of $8,153.55 for damages. Every bond must be restrictively construed "and can not be extended further than that specified therein." Section 1726 of the Civil Code, 1930 ed. In other words, this means that the sureties can not be made to answer for something beyond what they bound themselves. *Avalo* v. *Cacho*, 71 P.R.R. 97, 102. The judgment should therefore specify the sum for which each surety must answer. In this connection, it should be borne in mind that the first $2,000 bond answers only for the damages resulting from December 19, 1933 to March 9, 1934, that the second and third bonds for $2,000 and $3,000, respectively, cover the resulting damages from March 10, 1934 to May 31, 1938, when this Court entered judgment in the instant case, and that the fourth bond, namely, the supersedeas bond for $10,000, was to answer for the damages resulting from the stay of our judgment and until such time as the action was finally decided. The same may be said with respect to the sum of $882.65 awarded, representing the "difference in the cost of construction prevailing between 1933 and 1941, when the spur was constructed." The error thus committed calls for reversal of the judgment as respects the sureties.

■ The trial court further committed the following error: The Great American Indemnity Co. filed a cross-

---

the provisions of this Code, the officer taking the same must require the sureties to accompany it with an affidavit . . .

"(2) Any corporation with a paid-up capital . . . may become and may be accepted as security or as sole and sufficient surety upon such undertaking or bond . . . *Provided,* That said corporation shall have complied with all the requirements of the law of this Island, regulating the formation or admission of these corporations to transact such business . . . "

claim against the municipality alleging that the latter was bound by the bonds given to compensate any loss, damage, or expense which the company might incur. The municipality filed no answer and its default was entered. The bonding company submitted evidence in support of its claim. However, the judgment of the lower court merely orders the municipality to pay to the Great American the sum of $860.49 "incurred by that company in the investigation and defense of this action . . . and the sum of $2,000 for attorney's fees incurred by that company." Nothing was said about the payment by the municipality to the Great American Indemnity Co. of any sum which the latter may be bound to pay for damages to the heirs of Stella Rodríguez, nor about additional attorney's fees which the guarantor might incur as a result of the appeal taken to this Court. The court was also silent about the municipality's obligation to appropriate in the succeeding year's budget the sums which it was bound to pay to the bonding company by reason of the judgment.[6]

The eighth error assigned by the Great American Indemnity Co., which is the only one complained of by the plaintiff succession, deals with the attorney's fees awarded. The former holds that the court erred in ordering it to pay such fees, and plaintiff that the amount adjudged for such account is insufficient. Although the case will be remanded to the original court, we believe the errors thus assigned call for decision: first, because the judgment rendered will be

---

[6] We are fully aware that since we are concerned with several bonds and several sureties, and since the amount corresponding to each bond must be determined, the lower court is in no position to determine offhand the specific amount or amounts which the municipality will be required to pay to the Great American Indemnity Co. for damages sustained by the heirs and for expenses incurred by the Great American Indemnity Co. as a result of the appeal taken to this Court. However, the judgment which on this point may be rendered by the court of first instance must be drawn up in such manner that, when in this suit, and after hearing the municipality, the amounts actually paid by it for the foregoing accounts are ascertained, it can be expanded to set forth clearly the exact amount for which the municipality will be liable to the bonding company.

final and unappealable as respects the municipality; and second, because for the remaining defendants, the case will go back to the lower court solely for further proceedings in nowise affecting this aspect of the case.

We have read the record with the thoroughness and care the case calls for. That reading convinces us that, far from believing that the lower court erred in awarding attorney's fees to plaintiff, considering the manifold steps taken and argued in the case and the number of days the trial lasted, such fees must be fixed at $2,000.

The appeal taken by the Municipality of Guayanilla will be dismissed. As respects the appeals taken by sureties Rodríguez Díaz, Rodríguez, Jr., and the Great American Indemnity Co., the judgment appealed from will be reversed and the case remanded to the Ponce court for further proceedings consistent with this opinion. And as respects all the parties, the judgment will be modified so as to fix at $2,000 the attorney's fees awarded to plaintiff.

Mr. Chief Justice Snyder, Mr. Justice Ortiz and Mr. Justice Belaval did not participate herein.